Exhibit 1

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") creates a contract that binds Resident and Owner as of the Effective Date. This Lease, and any reference to this Lease, consists of and includes: (1) the Acknowledgment Regarding Written Agreement; (2) the Basic Provisions in Part I, and the Terms and Conditions, and Definitions in Part II; (3) the Attachments listed in the Basic Provisions in Part I; and (4) the Community Standards (which may also be referred to as "Rules and Regulations") provided to Resident including any subsequent amendments or updates.

### PART I - BASIC PROVISIONS

**BASIC PROVISIONS.** In the event of any conflict between the terms and conditions set forth in this Part I (collectively, the "**Basic Provisions**") and any other provision of this Lease, such other provision will control.

(a) **Effective Date:** 3/26/2020

(b) Community Name, Address, Telephone, Email, Authorized Agent, and Community Owner Name (collectively "**Owner**"):

Northgate Manufactured Home Community
1260 NE US Hwy 69
Liberty, MO 64068
Tel.: 816-452-4418
Email: MO.Northgateteam@impactmhc.com
Authorized Agent: Community Manager *(or other designated person)*
Community Owner: MOCL Northgate MHP, LLC

*(Mailing Address, if different)*
1260 NE US Hwy 69
Liberty, MO 64068

(c) Name(s) of Resident(s) signing Lease (collectively, "**Resident**"):

(1) Jessica Abarca           DOB: 3/14/1989
(2) _____         DOB: _____
(3) _____         DOB: _____
(4) _____         DOB: _____

(d) **Occupants** (List any other occupants that will reside at the Premises and their ages):

(1) Miyah Abarca-Smith       DOB: 08-12-202_
(2) Jaxon Ray Scott Abarca   DOB: 11-07-2015
(3) _____         DOB: _____
(4) _____         DOB: _____

(e) The **Premises**:
Homesite/Lot Number: 055
Street/Mailing Address/City/State/Zip: 1260 NE US Hwy 69 #55
Liberty, MO 64068

**(f) Lease Term:**

**HOME RENTER Lease Term**

( ) Month-to-Month. A term commencing on the Effective Date and continuing until the last day of the month that is at least thirty (30) days after Owner or Resident elects to terminate this Lease.

( ) Other. A term commencing on the Effective Date and expiring on *(last day of Homesite/Lot Lease Term)*

( ) Not Applicable.

**HOMESITE/LOT Lease Term**

(X) Month-to-Month. A term commencing on the Effective Date and continuing until the last day of the month that is at least thirty (30) days after Owner or Resident elects to terminate this Lease.

( ) Other. A term commencing on the Effective Date and expiring on _____ *(last day of Homesite/Lot Lease Term)*

**(g) Move In Date:** 3/26/2020

**(h) Home Rent:**

( ) $ _____ per month. (Month to Month Lease Terms)

( ) $ _____ per month for the period commencing on the Effective Date, and ending on , **and for any automatic renewal** $ _ per month, for the period commencing on _ and ending on _. (Other Lease Terms)

(X) Not Applicable.

**(i) Homesite/Lot Rent:**

(X) $434.00 per month. (Month to Month Lease Terms)

( ) $434.00 per month for the period commencing on the Effective Date, and ending on , **and for any automatic renewal** $_ per month, for the period commencing on _ and ending on _. (Other Lease Terms)

**(j) Base Rent.** The Base Rent under this Lease is the amount of the Home Rent (if any), *plus* the Homesite/Lot Rent.

**(k) Prorated 1st Month's Rent**: If the Lease Term commences on any day other than the first (1st) day of the month, Resident shall pay Owner an amount equal to as prorated Base Rent for such month. **NOTE: Last month's Rent WILL NOT be prorated.**

**(l) Security Deposit:** $0.00 for Home AND $434.00 for Homesite/Lot     OR  ( ) Not Applicable

**(m) Last Month's Rent:** $0.00 for Home AND $0.00 for Homesite/Lot     OR  (X) Not Applicable

**(n) Other Charges** (X all that apply): The following charges, where applicable, may require a separate signed agreement ("addendum"). These charges will not be separately invoiced but as a convenience will appear on Resident's monthly statement and are due and payable in full at the same time as your monthly Base Rent, utilities, etc.

| | | | |
|---|---|---|---|
| ( ) | Storage | $0.00 | per month. |
| ( ) | Pet Rent (COH Rental Only) | $0.00 | $25.00 per first pet per month, $15.00 per second pet per month. |
| ( ) | Parking | $0.00 | $25.00 per extra vehicle per month. |
| ( ) | Taxes | $0.00 | per month. |
| ( ) | Other | $0.00 | per month. |

**(o) Summary of Move In Costs and Monthly Charges:**

| Amounts Due Before or At Move In | | Summary of Estimated Monthly Charges* | |
|---|---|---|---|
| 1st Month's Rent - Home | $ | Home Rent | $ |
| 1st Month's Rent - Homesite/Lot | $434.00 | Homesite/Lot Rent | $434.00 |
| Security Deposit - Home | $0.00 | Utilities (W/S/G/E/P) | *Per Utility Addendum* |
| Security Deposit - Homesite | $434.00 | Trash | *Per Utility Addendum* |
| Last Month's Rent - Home | $0.00 | Storage | $0.00 |
| Last Month's Rent - Homesite | $0.00 | Pet Rent (COH Rental Only) | $0.00 |
| Pet Damage/Cleaning Deposit | | Taxes | $0.00 |
| Pet Fee | | Parking | $0.00 |
| Pet Rent (COH Rental Only) | $0.00 | Owner's Self Help Costs | *Not Yet Determinable* |
| Key Deposit (COH Rental Only) | $0.00 | Municipal Fees and Taxes | $0.00 |
| | | Insurance | $0.00 |
| | | Fines, Fees and Other Charges | *Not Yet Determinable* |
| | | Late Charge | $50.00 |

*Some monthly charges are an estimate only and actual charges may vary.*

**(p) Rent Payments and Payment Address:** **WE DO NOT ACCEPT CASH PAYMENTS, NEVER PAY YOUR RENT IN CASH.** Please make **CHECKS** or **MONEY ORDERS** payable to the property management company: **MOCL Northgate MHP, LLC** Rent payments may be dropped off in person at the Community Office, or mailed to:

> MOCL Northgate MHP, LLC
> 1260 NE US Hwy 69
> Liberty, MO 64068

We also offer the convenience of *ELECTRONIC PAYMENTS*. Please refer to the Electronic Payment Authorization form provided to you.

**(q) Owner's Notice Address (Do Not Use For Rent Payments):** Notices to the Owner may be mailed or hand-delivered to the Community Manager at the same address where you mail or pay your rent in person, with a copy mailed to:

> P.O. Box 457
> Cedaredge, CO 81413
> Attn: Legal Department

**(r) Resident's Notice Address:** ( x ) The Premises    ( ) Other: _____

**(s) Lease Attachments:** An X by the addendums and other documents listed below ("Attachments") indicate they are made a part of the Lease and their terms apply whether or not signed by Resident.

- ( X ) RESIDENT OWNED HOME ADDENDUM
- ( ) HOME RENTER ADDENDUM
- ( X ) UTILITIES ADDENDUM
- ( X ) STATE-SPECIFIC ADDENDUM
- ( X ) RULES AND REGULATIONS/COMMUNITY STANDARDS
- ( ) STORAGE AGREEMENT
- ( X ) PET/ANIMAL ADDENDUM
- ( ) LAST MONTH'S RENT ADDENDUM

( x )  RENT CONCESSION ADDENDUM

( )  HOME RESIDENCY COMMITMENT ADDENDUM

( )  RENT CREDIT PROGRAM AGREEMENT

( )  VIOLATION FINES AND COSTS ADDENDUM

## PART II – TERMS AND CONDITIONS, AND DEFINITIONS

1. **DEFINED TERMS.** In addition to the capitalized terms defined elsewhere in this Lease, the capitalized terms set forth in the Definitions shall have the meanings set forth in the Definitions with respect to the provisions of this Lease, any Attachments and the Community Standards.

2. **HOME.** Any and all references in this Lease or in any of the Attachments to the "Home" means the Home described in the Home Addendum. If the Home is leased by Resident, then the "Premises" shall include the Home.

3. **OWNER; LEASE OF THE PREMISES; USE OF COMMON AREAS.**

    (a) **Owner.** Home Owner (to the extent it is a party to this Lease pursuant to a Home Renter Addendum), Homesite Owner, and Resident each agree and acknowledge as follows:

    (i) For all purposes, this Lease (incorporating, for the sake of clarity, the Home Addendum (if relevant)) includes: (1) a lease by Homesite Owner of the Homesite to Resident, and (2) if the Premises includes the Home, a separate lease by Home Owner of the Home to Resident.

    (ii) References to the "Owner" in this Lease or any of the Attachments shall be deemed to include a separate reference to each of (1) Homesite Owner, insofar as is relevant to the lease of the Homesite by Resident, and (2) Home Owner, insofar as is relevant to the lease of the Home by Resident. If the Premises does not include the Home, all references in this Lease and any Attachments to "Owner" shall be deemed to be a reference only to Homesite Owner. Notwithstanding anything herein to the contrary, Homesite Owner shall be entitled to collect all Rent and other amounts provided hereunder to be paid to Owner.

    (b) **Lease of the Premises.** In consideration of the mutual covenants contained herein, Owner hereby leases to Resident, and Resident hereby rents from Owner, the Premises.

    (c) **Use of Common Areas.** Subject to the provisions of the Lease, Resident shall have the non-exclusive right to use during the Lease Term all Common Areas designated by Owner for use by Community Residents. The Common Areas shall be at all times subject to the exclusive control and management of Owner, and Owner shall have the right at any time, and from time to time, to change the area, level, location and arrangement of the Common Areas and to close all or any portion of the Common Areas. To the extent the Common Areas include parking areas, this shall in no way be construed as giving Resident any rights or privileges in connection with such parking areas unless such rights or privileges are expressly set forth in the Lease.

4. **LEASE TERM.** The term of this Lease shall be for the Homesite Lease Term and Home Lease Term (if applicable) as set forth in the Basic Provisions, unless sooner extended or terminated pursuant to this Lease. Unless Resident has surrendered the Premises in accordance with the terms and conditions of this Lease on or before the expiration of the Lease Term, then, upon the expiration of the Lease Term, all terms and conditions of this Lease shall remain in full force and effect (except as Rent may be increased as provided for in the Lease) and the Lease Term shall be continued on a month-to-month basis (if any, the "**Month-to-Month Term**") until the last day of the month that is at least thirty (30) days after Owner or Resident elects to terminate this Lease, or such other period as is required by Law.

5. **RENT.**

    (a) **Agreement to Pay Rent.** Resident agrees to pay Rent to Owner, at the Rent Payment Address (or to such other persons, or at such other places, designated by Owner), without any prior demand therefor in immediately available funds and without any deduction or offset, except as otherwise permitted by Law. Base Rent shall be paid monthly in advance on the first (1st) day of each month of the Lease Term, except that the first installment of Base Rent shall be paid by Resident to Owner on or before the Effective Date. At Owner's discretion, Base Rent may be prorated for partial months within the Lease Term; provided, however, no such proration shall be made during any Month-to-Month Term, and Resident shall pay Rent for the entire month regardless of whether Resident occupies the Premises for such month. When made, payments will, at Owner's option, first be applied to past due Rent, with the balance, if any, to be applied to current obligations in like order.

    (b) **Late Charges.** Where permitted by and in accordance with Law, Resident agrees to pay Owner (i) a Late Charge for each month that Rent is not paid by 5 p.m. (in the local time zone where the Community is located) on the 5th day of the month (Example: if Rent is received any time after 5:01 p.m. on the 5th day of the month, a Late Charge will be added to Resident's account), and/or (ii) a Daily Late Fee for every day Rent remains unpaid after 5 p.m. on the 5th day of the month (Example: if Rent is not paid until the 10th day of the month, a Daily Late Fee will be charged to Resident's account for each day that

Rent was unpaid; here, the total is five (5) days (from the 6th through the 10th)). Rent shall be considered paid when received by Owner and not when deposited in the U.S. Mail. *Except as otherwise set forth herein, all Rent payable under the Lease and Attachments shall be paid only by check, money order or Electronic Payment (as defined below). NEVER PAY YOUR RENT IN CASH.*

(c) **Increased Rent During Month-to-Month Term**. During the Month-to-Month Term, Owner may, in Owner's sole and absolute discretion, increase or decrease the Rent provided for in this Lease upon thirty (30) days prior written notice to Resident (or such longer period of time as required by Law). If, within thirty (30) days of the receipt of such notice (or such longer period of time as is required by Law), Resident does not notify Owner in writing that Resident is rejecting the increase and surrendering the Premises at the end of the notice period, Resident shall be bound by the terms of the notice.

(d) **Lease-Specific Taxes & Fees**. If Resident fails to pay any Lease-Specific Taxes & Fees, then Owner shall have the right (but not the obligation) to pay any such amounts without notice to Resident, and any amounts so paid by Owner will be added to Resident's account and will be immediately due and payable as Additional Rent. To the extent permitted by Law, Resident shall, promptly after Owner's request, provide Owner with evidence of Resident's payment of any Lease-Specific Taxes & Fees.

(e) **Electronic Payments**. Owner shall have the right, but not the obligation, to offer Resident the ability to make Rent payments pursuant to automated clearing house (ACH) debits or other electronic payment methods (collectively, "**Electronic Payments**"). If Resident has properly registered for Electronic Payments pursuant to Owner's then-current protocols authorizing Electronic Payments ("**Electronic Payment Authorization**"), then Resident hereby authorizes Owner to initiate debit entries to Resident's approved checking and/or savings account(s), and to debit Rent payments from such account(s) in accordance with the terms and conditions of the Electronic Payment Authorization. The foregoing authorization shall remain in full force and effect until revoked in accordance with the terms and conditions of the Electronic Payment Authorization. Notwithstanding anything in this Lease (including, without limitation, any Electronic Payment Authorization) to the contrary, Resident acknowledges and agrees that Owner's acceptance of any Electronic Payments shall not relieve Resident of its obligation to make timely payment of all Rent due hereunder. Resident also acknowledges that if any Electronic Payment is rejected due to insufficient funds, Owner may immediately and without notice revoke Resident's ability to make Electronic Payments.

6. **SECURITY DEPOSIT.**

    (a) **Security Deposit**. Except as otherwise provided by Law, Resident agrees: (i) to pay, on or before the Move In Date, the Security Deposit specified in the Basic Provisions, which sum shall be held by Owner, without interest, as a security deposit and will not be returned until and after the Premises have been vacated and inspected by Owner; (ii) the Security Deposit may be used by Owner to pay for damage (other than reasonable wear and tear) to the Premises (including, without limitation, its lawn or other improvements) and for damage (other than reasonable wear and tear) caused by any Resident Party to the Common Areas or any other portions of the Community; (iii) Owner may also use the Security Deposit as compensation for unpaid Rent, for cleanup costs, for damages of any nature sustained because of breach by Resident of any of the terms of this Lease, including the covenants and conditions to be kept and performed hereunder by Resident and for any other purpose permitted by Law; and (iv) the Security Deposit is not advance rent and cannot be applied to Rent by Resident.

    (b) **Security Deposit Return**. Owner shall refund the Security Deposit to Resident as provided in this Lease and applicable Law. *Unless otherwise provided by Law, no part of the Security Deposit shall be refunded unless Resident provides at least thirty (30) days prior written notice of surrender of the Premises.* At the option of Owner, Owner may pay any refund of the Security Deposit after applying all deductions, by one check payable and delivered to any Resident or one check jointly payable to all Residents but delivered to only one Resident. The amount of any refund will be calculated without regard to who paid the Security Deposit or whose conduct resulted in any deductions. To the extent permitted by Law, each Resident must provide written notice of the mailing address for any refund of the Security Deposit. Owner shall mail the Security Deposit (less lawful deductions) and an itemized list of deductions no later than 60 days (or such shorter period as may be required by Law) after Resident's surrender of the Premises. The refund and/or written explanation of any portion of the Security Deposit retained by Owner shall be mailed to Resident at Resident's last known address. Upon the sale or transfer of the Community by Owner and transfer of the Security Deposit to the new owner of the Community (either as a transfer of the Security Deposit or a credit against the purchase price), to the extent permitted by Law, Resident shall look solely to the new owner, and not to Owner, for a refund of the Security Deposit.

7. **UTILITIES AND TRASH.** Resident agrees to pay for all utilities and trash removal, as Additional Rent, at the time and in the manner set forth in the Utilities Addendum.

8. **USE.** Resident agrees to the following restrictions and conditions of use of the Premises:

    (a) **Residential Use and Occupancy**. The Premises shall be used only by Resident and Approved Occupants only for residential purposes. Unless otherwise provided by Law or with the advance written consent of Owner, Occupancy of the Home is restricted to no more than 2 persons per bedroom. No commercial or business activity or enterprise shall be conducted by Resident in the Community except those activities expressly authorized by Law or the Community Standards and any

amendments. All persons over the age of 18 living in the Premises for more than 14 consecutive days, as determined by Owner in its sole and absolute discretion, must fill out an Application, be screened, approved as an Approved Occupant, and must agree to be bound by the terms of this Lease and all Attachments. Failure to comply with this provision will be grounds for immediate eviction.

(b) **Governmental and Private Regulations**. Resident shall occupy and use, and shall cause each Resident Party to use, the Premises in compliance with (i) all Laws and (ii) all reasonable Community Standards (rules and regulations) of the Owner. Resident shall indemnify, save and hold Owner's Related Parties harmless with respect to any violation of this provision. Any criminal activity conducted on the Premises or in the Community will be grounds for immediate eviction.

(c) **Mutual Enjoyment**. Resident shall not interfere with the lawful and proper use and enjoyment of the Community, including Common Areas and other Homesites, by any other Residents. Resident shall not permit the playing of audio/visual appliances such as radio, television or musical instruments, or the making of any other sounds or noises at levels loud enough to be heard by other Community Residents and shall not become a nuisance or disturbance to any other persons. Resident shall not unreasonably interfere with Owner's management of the Community.

(d) **Common Areas**. The Common Areas are for the mutual use and enjoyment of all Residents, their Guests and Approved Occupants. Use of the Common Areas will be at each Resident Party's own risk, and Resident shall hold Owner's Related Parties harmless with respect to such use. Owner will not at any time provide supervisory personnel.

(e) **Assignment or Sublet**. The Community is intended to be an owner- or tenant-occupied community. Except as otherwise required by Law, Resident shall not Transfer this Lease or the Premises or Resident's interest therein (including, without limitation, title to the Home) without the prior written consent of Owner, which may be withheld in Owner's sole and absolute discretion. Any approved sublessee is not permitted to further sublease or allow any other person to occupy the Premises, except for Guests. Owner shall have the right, at its sole discretion, to own and rent homes to approved residents. Any purported Transfer without the prior written consent of Owner is null and void. A departing Resident's claim to any Security Deposit automatically transfers to the replacing Community Resident upon the date of Owner's written approval of such replacement, and the departing Resident shall have no rights or claims to the Security Deposit against Owner. Any Resident that owns the Home shall not Transfer the Home except in accordance with the terms and conditions of the Lease and all Attachments. Notwithstanding anything in this Lease to the contrary, Owner may, as a condition to its consent to any assignment of this Lease, require replacing Resident to deposit an additional security deposit with Owner.

9. **MAINTENANCE**.

    (a) **In General**. Resident must keep the Premises and the Home neat and orderly at all times. Additionally, Resident shall not allow items of clutter to exist on the Premises. All items, including children's toys and play items, lawn furniture, barbecue grills and the like, must be stored in a neat and orderly manner, and as further provided in the Community Standards.

    (b) **Mold and Pests**. Resident and Owner agree that they desire to keep the Premises free from unhealthy conditions, including excess moisture, the growth of mold and mildew, and pest infestation. Resident's failure to properly maintain the Premises free of such unhealthy conditions constitutes material noncompliance with the terms of this Lease and is grounds for termination and eviction. Remediation and/or removal of such conditions shall be at Resident's sole cost and expense.

    (c) **Repairs or Emergencies**. Resident agrees to notify Owner immediately of any defective condition of the Premises or the Community which the Resident has reason to believe is the duty of Owner to repair (if any).

10. **ENTRY**. Resident agrees that, in accordance with, and to the fullest extent allowed by Law, at all reasonable times during the Lease Term, Owner and its agents (including Community Manager) may enter the Premises for purposes of inspection, cleaning, repairs, posting of notices or Utility Bills or, in the event of an emergency, to perform acts Owner deems necessary for the protection of the Premises or safety of Community Residents or other persons. Additionally, and in accordance with Law, Owner may enter the Premises and the Home in a reasonable manner and at a reasonable time if: (a) an emergency exists; (b) Owner reasonably believes that Resident has abandoned the Home; (c) Owner or any of its affiliates provided Resident financing for the purchase of the Home (or if Owner or any of its affiliates are or may be financially responsible, in any manner, for the Home, including, without limitation, by way of guaranteeing the financing for the Home or otherwise); or (d) Resident has given his/her consent (which consent may be verbal). Resident agrees that such entry shall not constitute an eviction of Resident in whole or in part and that all Rent due and payable by Resident under this Lease shall in no way be reduced by reason of inconvenience, annoyance, disturbance or injury to Resident due to such access. Resident agrees not to hold Owner's Related Parties responsible for any acts or omissions by any of Owner's Related Parties while entering the Premises and/or the Home pursuant to this section.

11. **DEFAULT BY RESIDENT; TERMINATION**.

    (a) **Default**. A default under the Lease includes but is not limited to:

        (i) The failure to pay Rent or other lawful amounts when due under this Lease, including reimbursement for damages and repairs;

        (ii) The violation of any covenant or condition of this Lease or any Laws with respect to the use or occupancy of the Premises or the Community;

        (iii) Abandonment of the Premises;

(iv) Providing incorrect or false information on any application for residency or financing (if applicable);

(v) during the Lease Term, any Resident Party is convicted of criminal activity including but not limited to drug-related offenses (manufacture, use or possession), sexual offenses, crimes against person or property, any violent or aggravated felony, or gang-related offense;

(vi) illegal drugs are found on or in the Premises;

(vii) Resident or any Occupant has been, is or becomes a Prohibited Person designated by the United States government as a person who commits or supports terrorism or is involved in international narcotics trafficking;

(viii) Resident defaults, after any applicable notice and cure period, on any term or condition to be performed by it pursuant to any other written agreement by and between Resident and any of Owner's Related Parties, including, without limitation, any supplemental agreement with any of Owner's Related Parties; or

(ix) Any other acts or omissions providing a basis for default under the Lease or applicable Law.

(b) **Remedies.** Upon a default by Resident, after the lapse of any applicable statutory cure period, Owner shall have all remedies available at Law, equity and pursuant this Lease, all of which may be pursued individually, successively or together. Upon a default by Resident, Owner may, at its option (i) terminate the Lease and collect Rent Default Termination Damages, (ii) collect the Rent Damages, if any, and any other Loss, if any, related to any Non-Rent Defaults and/or (iii) forcibly enter the Premises and remove all Resident Parties in accordance with all applicable Laws.

(c) **Notice of Termination.** Owner shall not be deemed to have terminated this Lease unless such termination is in a writing signed by Owner expressly terminating this Lease. Owner may terminate Resident's right of occupancy of the Premises by giving Resident notice in accordance with applicable Laws, and be entitled to immediate possession by eviction suit. Upon any default by Resident, Owner shall be entitled to collect the Enforcement Costs. To the extent permitted by Law, Owner may give notice to vacate, if required, by any of the following methods:

(i) personal delivery to any Resident;

(ii) personal delivery at the Premises to any occupant 16 years of age or older;

(iii) affixing the notice to the outside of the main entry door of the Home; or

(iv) as otherwise permitted by Law.

(d) **Credit Reporting.** Owner may report Resident's payment history, outstanding balances, returned item fees, late fees and all Lease defaults including unpaid Rent, other amounts due and/or insufficient funds or returned checks, to any national or local credit bureau or other similar collection or credit reporting service for permanent inclusion in Resident's credit record as well as to any national or local tenant reporting bureau.

(e) **Owner's Right to Perform Resident Duties; Lien Rights.** If Resident fails timely to perform any of its duties under this Lease, Owner shall have the right (but not the obligation), to perform such duty on behalf and at the expense of Resident without prior notice to Resident; and all sums expended or expenses incurred by Owner in performing such duty (together with any lawful hourly labor charges that Owner may impose from time to time, collectively, "**Self-Help Costs**") shall be deemed to be Additional Rent under this Lease and shall be due and payable immediately upon demand by Owner. To the extent permitted by Law and contract, Owner shall have a legal possessory lien on the Home (except a "COH") for any unpaid Rent, including, without limitation, Self Help Costs.

12. **RETURN OF PREMISES.** Resident agrees to refrain from causing damage to the Premises and to return the Premises at the expiration or termination of the Lease Term in the same condition as when received, reasonable and ordinary wear excepted. Any damage to the driveway, Homesite or any other portion of the Premises or the Community caused by the installation or removal of the Home or its improvements not repaired to Owner's satisfaction may, at Owner's discretion, be repaired by Owner and such costs charged to Resident as Additional Rent.

13. **NON-WAIVER.** Any failure by Owner to enforce the obligations, agreements, or covenants contained in the Lease shall not be deemed a waiver of any subsequent right of Owner to enforce the same or other obligations, agreements, or covenants. Owner's failure to seek a remedy for any breach by Resident, or receipt of Rent with knowledge of any such breach, shall also not be deemed a waiver by Owner of its rights or remedies with respect to such breach or subsequent breaches.

14. **OWNER'S CUMULATIVE RIGHTS.** No right or remedy conferred upon or reserved to Owner is intended to be exclusive of any other right or remedy. Each and every right and remedy shall be cumulative and in addition to any other right and remedy given hereunder, now or hereinafter, existing at Law or in equity or by statute.

15. **EXTENDED ABSENCE.** Resident shall provide Owner with at least seven (7) days advance written notice of any planned absence from the Premises which will exceed fourteen consecutive (14) days.

16. **INJUNCTION; WAIVER OF JURY TRIAL.** In addition to all other remedies provided in this Lease, Owner is entitled to seek injunctive relief for the violation, or attempted or threatened violation, of any of the terms, covenants, conditions or provisions of this Lease. Both Owner and Resident hereby waive their right to a trial by jury in any action involving the Lease.

17. **ATTORNEYS' FEES.** To the extent allowed by applicable Law, attorneys' fees and all costs and reasonable expenses incurred by Owner by reason of a default by any Resident Party, or in obtaining compliance with requirements of this Lease, shall constitute Additional Rent to be paid by Resident, payable immediately upon demand. In the event of litigation or arbitration arising under this Lease, the substantially prevailing party as determined by the trier of fact shall be entitled to reasonable attorneys' fees and costs of the litigation or arbitration.

18. **BINDING EFFECT.** Except as otherwise provided in the Lease, this Lease and all of its covenants, conditions, terms and provisions are binding upon and shall inure to the benefit of the successors, assigns, heirs, executors and administrators of Owner and Resident.

19. **NOTICES.** The person authorized to act for and on behalf of the Owner for the purpose of managing the Community and receiving notices and demands is the Community Manager, whose address is the Owner's Notice Address first listed in the Basic Provisions. Owner may, unless otherwise required by Law, give all required notices to Resident (a) by personal delivery to a person over the age of 16 occupying the Premises, (b) by depositing same in the U.S. Mail, addressed to Resident at the Premises or (c) affixing the notice to the outside of the main entry door of the Home. Resident shall give all notices to Owner by personal delivery or by depositing same in the U.S. Mail, addressed to Owner's Notice Address. Owner may change Owner's Notice Address upon notice to Resident.

20. **RULES AND REGULATIONS; THE STANDARDS.** The Rules and Regulations, or Community Standards (also "Standards"), are incorporated as terms and conditions of this Lease. *By signing this Lease, Resident acknowledges receipt of a copy of the current Standards.* Resident agrees to comply with these Standards and all amendments, in accordance with applicable Law, without consent of Resident. The Standards are designed to be reasonable and in the best interests of all Community Residents. Copies of the current Standards will be posted, delivered and/or available to Resident in the Community Manager's office during normal working hours. In addition to any other rights of Owner under this Lease, Owner may impose a fine or fines on Resident to promote enforcement of and compliance with the terms of this Lease and/or the Standards.

21. **LIABILITY.** Owner shall not be liable for any loss of, or damage or injury to, the person or property of any Resident Party caused by, but not limited to: (a) any condition of the Premises and/or the Community (including, without limitation, defects, disrepair or faulty construction of the Premises or the Community); (b) any act, fault, or neglect of any Resident Party or of any other Community Resident, or of any trespasser; (c) fire, water, steam, rain, hail, wind, flood, sewerage, odors, electrical current, insects, mold, mildew, fungus, or any act of God; or (d) theft or embezzlement, unless any of the foregoing was caused by Owner's gross negligence or willful misconduct. Resident shall indemnify and hold Owner's Related Parties harmless from and against any and all Losses to the Premises or other property or personal injury arising from Resident's use or occupancy of the Premises or from any activity, work or thing done, permitted or suffered by any Resident Party in or about the Premises or the Community. Resident shall promptly notify the Owner in writing of any known or observed defect existing at or around the Community.

22. **RESIDENT INSURANCE.**

    (a) **Acknowledgement by Resident.** RESIDENT ACKNOWLEDGES NOTIFICATION THAT OWNER'S INSURANCE DOES NOT INSURE RESIDENT, THE HOME NOR ANY OF THE CONTENTS OF THE HOME AGAINST LOSS OR DAMAGE DUE TO FIRE, THEFT, VANDALISM OR OTHER CASUALTIES OR CAUSES.

    (b) **Resident Insurance.** Resident shall, at Resident's sole cost and expense, maintain in force during the Lease Term the following insurance:

    (i) General Liability Insurance with such limits and in such forms as Owner shall reasonably require from time to time during the Lease Term.

    (ii) Any insurance required to be maintained by Tenant pursuant to the Home Addendum; and

    (iii) Such other insurance and with such limits as Owner shall reasonably require from time to time during the Lease Term.

    (c) **Form of Policies.** Each insurance policy required to be maintained pursuant to this Lease shall (i) name Owner as additional non-contributory insureds or loss payees, as applicable (ii) be issued by one or more responsible insurance companies licensed to do business in the State in which the Community is located and (iii) shall provide that such insurance may not be canceled or materially amended without thirty (30) days' prior written notice to Owner. Resident shall deliver to Owner certificates of insurance of all policies and renewals thereof to be maintained by Resident hereunder (i) not less than ten (10) days prior to the Commencement Date, (ii) not less than ten (10) days prior to the expiration date of each policy and (iii) within a reasonable time after Owner's written request.

    (d) **Failure to Obtain Insurance.** In the event that Resident fails to maintain and pay for any of the insurance required by this Lease, Owner may but is not obligated to obtain such insurance and pay the required premiums, in which event Resident shall repay Owner, as Additional Rent, all such sums paid by Owner within thirty (30) days following Owner's written demand to Resident for such payment.

    (e) **Waiver of Subrogation.** Resident hereby waives any and all rights of recovery, claim, action or cause of action against Owner's Related Parties for any damage that may occur to the Premises, the Home and/or any personal property therein by reason of any cause which is insured against under the terms of any insurance policies required to be maintained hereunder, regardless of cause or origin, including the negligence of any of Owner's Related Parties *provided, however*, that the waivers

in this Lease may not be voided, avoided, vitiated or otherwise modified in the event that Resident fails to maintain the insurance that is required to be maintained pursuant to this Lease. Resident agrees that no insurer shall hold any rights of subrogation against any of Owner's Related Parties. Resident agrees that its insurance policies shall be endorsed or otherwise written to provide that no insurer shall hold any rights of subrogation against any of Owner's Related Parties.

23. **TERMS.** Except as otherwise specified herein, throughout this Lease, the singular shall include the plural, the plural shall include the singular and the masculine gender shall include the feminine or neuter gender, as the context shall indicate or require. With respect to any limitation of liability, release or indemnity, and as otherwise appropriate, "Owner" shall mean, in addition to Owner as specified above, Owner's Related Parties. Where appropriate, "Resident" shall include all Resident Parties.

24. **APPLICATION.** Resident represents to Owner that any and all Applications for Residency that Resident or any other Resident Party have provided to Owner in connection with this Lease (including, without limitation, any financing applications) are true to the best of Resident's knowledge and belief. Misrepresentations or false statements on any such submittals are grounds for termination of this Lease.

25. **SEVERABILITY.** If any part of this Lease is found by a court of competent jurisdiction to be void or unenforceable, the remaining provisions shall continue in full force and effect.

26. **SHARING OF INFORMATION.** Resident agrees to provide Owner with a completed resident data sheet at least annually if requested by Owner, or as often as necessary to keep all information thereon current, in a form acceptable to Owner. Resident acknowledges and agrees that Owner may, to the extent permitted by Law and in accordance with Owner's privacy policies promulgated from time to time, share all information provided by Resident to Owner with any of Owner's affiliates.

27. **GOVERNING LAW; CONFLICTS.**

    (a) **Governing Law.** This Lease shall be governed under the laws of the State in which the Community is located.

    (b) **Conflicts.** To the extent that any Laws of the State impose any requirement on Owner or Resident that are contrary to any provision of this Lease or prohibit the inclusion in any lease of any provision included in this Lease, this Lease shall be deemed to be amended so as to comply with such Law. The reformation of any provision of this Lease shall not invalidate this Lease. If an invalid provision cannot be reformed, it shall be severed and the remaining portions of this Lease shall be enforced.

28. **NO WARRANTY.** Resident acknowledges that Resident has had the opportunity to inspect the Premises and the Community prior to signing this Lease. Resident further acknowledges that, to the extent permitted by Law, Owner disclaims any warranties that the Premises and/or the Community will be fit for any particular purpose, and Resident takes the Premises and the Community "as is".

29. **NON-RECOURSE OBLIGATION OF OWNER.** Except as otherwise mandated by Law, Owner shall not be liable to Resident for any damages, costs or expenses in excess of Owner's interest in the Premises (and not any other portion of the Community). All judgments against Owner shall be enforced only against such interest and not against any other present or future asset of Owner. Resident waives any right to make any Claim against or seek to impose any personal liability upon any of Owner's Related Parties (other than Owner).

30. **ASSIGNMENT BY OWNER; SUBORDINATION AND ATTORNMENT.** Nothing in this Lease restricts Owner's right to sell, convey, ground lease, hypothecate, assign or otherwise deal with the Premises or the Community or Owner's interest under this Lease. A sale, conveyance, or assignment of the Premises or the Community will automatically release Owner from liability under this Lease. Resident shall look solely to Owner's transferee for performance of Owner's obligations relating to the period after such effective date. This Lease will not be affected by any such sale, conveyance, ground lease hypothecation or assignment, and Resident will attorn to Owner's transferee. Resident accepts the Premises subject to and subordinate to any existing or future recorded mortgage, deed of trust, easement, lien or encumbrance, or, if determined by any lender, superior to any existing or future mortgage or deed of trust.

31. **STANDARD OF DECISION.** Unless otherwise expressly provided in this Lease or required by Law, if Owner has discretion with respect to any matter, or any consent or approval is to be made by Owner, such discretion, consent or approval shall be in Owner's sole and subjective discretion.

32. **ABANDONMENT; RESIDENT'S PERSONAL PROPERTY.** If Resident abandons the Premises, quits or vacates the Premises voluntarily, or is subject to eviction pursuant to applicable Law, then: (a) Owner may remove any property located on the Premises, but Owner shall not be obligated to effect such removal, and such property may, at Owner's option, be stored elsewhere, sold or otherwise dealt with as permitted by Law, at the risk of, expense of and for the account of Resident, and the proceeds of any sale shall be applied pursuant to Law; and (b) Owner's Related Parties shall be held harmless from any damage suffered by Resident. Without limiting the foregoing, if Owner reasonably believes that any personal property of Resident located in, around or attached to the Premises has been abandoned, Owner may hold such property without liability to Resident. To the extent required by Law, Owner will notify Resident at Resident's last known address of the abandoned property. If Resident does not then promptly claim and take possession of such property, Owner has Resident's permission to dispose of it in a reasonable manner. Resident will, as Additional Rent, pay any reasonable charges that Owner may incur for storing, moving or shipping such property.

33. **MERGER CLAUSE.** This Lease, together with the Attachments and Community Standards, constitutes the entire agreement between the parties concerning Resident's lease of the Premises. No representations, understandings, or agreements have been made or relied upon in the making of this Lease other than those specifically set forth. Except as otherwise expressly stated, this Lease can only be modified in a writing signed by the parties.

34. **RECEIPT OF LEASE.** The undersigned Resident hereby acknowledges this Lease is executed in duplicate, and each Resident has (a) received a copy, (b) read and understands this Lease and all Attachments, and (c) understands the Standards may be revised from time to time.

35. **MULTIPLE RESIDENTS.** If there is more than one Resident, each Resident is jointly and severally liable for all obligations under this Lease. The violation of this Lease by any Resident Party is a violation by all Residents. Requests and notices from Owner to any Resident constitute notice to all Resident Parties. A notice from, consent by (including consent for entry into the Premises) or action taken by any Resident is a notice from, consent by, or action of all Resident Parties. All demonstrations, inspections and explanations made by Owner to one of the Residents shall bind all Residents with the same force and effect as if made to each Resident. Any person who has permanently moved out according to an affidavit signed by a Resident is, at Owner's option, no longer entitled to occupancy of or keys to the Premises. The termination of such person's right of occupancy of the Premises shall not release such person from any obligations under this Lease unless specifically agreed in writing by Owner. In eviction suits, any one Resident is the agent of all other Resident Parties for purposes of judicial service of citation.

36. **MILITARY SERVICE.** In the event that Resident is now or becomes a member of the Armed Forces of the United States on active duty and receives change-of-duty orders to depart the local area then Resident may terminate this Lease by giving Owner thirty (30) days' written notice, provided that Resident is not otherwise in default or breach under this Lease. In such event Resident shall furnish Landlord a certified copy of such official orders which warrant termination of this Lease.

37. **REASONABLE ACCOMMODATIONS.** If a Resident, prospective Resident or someone associated with a Resident has a disability, he/she may make a written request for a reasonable accommodation at any time. Accommodations in Standards, policies, practices, or services may be made when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. Residents, prospective Residents or someone associated with a Resident acknowledge a housing provider can deny a request for a reasonable accommodation if it would impose an "undue financial and administrative burden" or it would "fundamentally alter the nature of the provider's operations." Please contact the Community Manager to get a copy of the reasonable accommodation policy and the necessary forms for the Resident to complete and return. The Community Manager will provide a timely written response to Resident's request for a reasonable accommodation.

38. **FAIR HOUSING.** Owner and the Community Manager offer Equal Housing Opportunities. Owner does business in accordance with State and Federal Fair Housing laws and will not discriminate against any person because of race, color, age, religion, sex, handicap, familial status or national origin in: the sale or rental of housing or residential lots; advertising the sale or rental of housing; financing of housing, or providing real estate brokerage services.

39. **DEFINITIONS.**

    "**Additional Rent**": All sums (other than Base Rent) due under this Lease to Owner.

    "**Adult Recreational Substance**": Recreational non-medical marijuana to the extent it has been legalized in the State where the Community is located.

    "**Agent**": Any person authorized by Owner to act on its behalf.

    "**Application for Residency**": Each application for residency and/or financing application submitted by any Resident Party in connection with a Resident's application for initial or continued occupancy at the Premises, together with all other information required to be submitted in connection with the application (photo ID, income verification, references, etc.).

    "**Approved Occupant**": Any person authorized, or screened and approved, by Owner to live at the Premises.

    "**Attachments**": The Attachments indicated and checked in the Basic Provisions as being a part of this Lease, together with any other addenda, agreements, and other attachments that become a part of this Lease.

    "**Base Rent**": The Base Rent set forth in the Basic Provisions.

    "**Basic Provisions**": The Basic Provisions set forth in the Lease.

    "**Claim**": Any claim for relief, including any alleged damages, whether accrued, contingent, inchoate or otherwise, suspected or unsuspected, raised affirmatively or by way of defense or offset.

    "**COH**" (**Community-Owned Home**): A manufactured home that is owned by the Owner or Owner's Related Parties and rented to a Resident.

    "**Common Areas**": Any parking lots, driveways, walkways, passageways, landscaped areas, laundry rooms, recreational areas, pool areas, club houses and other areas and facilities available for common use by Community Residents.

    "**Community**": The Community set forth in the Basic Provisions.

    "**Community Manager**": The employee of the property management company that manages the Community for Owner. The

Community Manager acts as an agent of Owner, and also acts as a separate agent of Homesite Owner and, if the Premises includes the Home, Home Owner.

"**Community Office**": The office or other space used by the Community Manager for conducting Community business.

"**Community Resident**": Any resident, tenant, subtenant or other occupant of the Community occupying a portion of the Community under the terms of a separate lease or sublease with Owner.

"**Community Standards**": The rules and regulations concerning Residents use and occupancy of the Community as updated from time to time. The terms "Community Standards" or "Standards," and "Rules and Regulations" may be used interchangeably.

"**Daily Late Fee**": The daily late fee imposed by Owner from time to time, but in no event in excess of the maximum daily late fee permitted by Law.

"**Effective Date**": The Effective Date set forth in the Basic Provisions.

"**Electronic Payments**": As defined in the Lease.

"**Electronic Payment Authorization**": As defined in the Lease.

"**Enforcement Costs**": Owner's costs of enforcing the terms of this Lease and of collection, including collection agency costs, litigation costs, and reasonable attorneys' fees (including in-house counsel and appeal), whether or not a lawsuit is brought.

"**Guest**": A guest or other invitee of Resident that temporarily resides at the Premises for less than 14 consecutive days.

"**Home**": The Home described in the Home Renter Addendum or Resident Owned Home Addendum.

"**Home Addendum**": The Home Renter Addendum or the Resident Owned Home Addendum, depending on which Addendum is attached to this Lease.

"**Home Rent**": The Home Rent set forth in the Basic Provisions.

"**Homesite(s)**": Any lot or homesite located within the Community (the terms lot and Homesite may be used interchangeably).

"**Homesite Lease Term**": has the meaning set for the in the Basic Provisions.

"**Homesite Owner**": has the meaning set forth in the Basic Provisions.

"**Homesite Rent**": The Homesite or lot Rent set forth in the Basic Provisions.

"**Home Lease Term**": has the meaning set for the in the Basic Provisions.

"**Home Owner**": Either the affiliate of Homesite Owner identified in the Home Renter Addendum as the owner of the Home, or the Owner of the Home identified in the Resident Owned Home Addendum, depending on which Addendum is attached to the Lease.

"**HUD Code**": The Manufactured Home Construction and Safety Act of 1974, as amended.

"**Late Charge**": The late charge imposed by Owner from time to time, but in no event in excess of the maximum late charge permitted by Law.

"**Laws**": All federal, state and local laws, codes, ordinances, rules, regulations, other requirements, orders, rulings or decisions adopted or made by any governmental body, agency, department or judicial authority having jurisdiction over the Premises or Resident's activities at the Premises.

"**Lease**": This Lease, including the Basic Provisions set forth in Part I, the Terms and Conditions set forth in Part II and the Attachments listed in the Basic Provisions, as the same may be amended from time to time.

"**Lease-Specific Taxes & Fees**": Collectively, all (a) personal property, sales, use, excise, gross receipts or similar taxes that are assessed or due by reason of the Lease or Resident's use of the Home or any other portion of the Premises or the Community, and (b) any and all fees, fines or other charges that arise from Resident's occupancy of the Premises, including, without limitation, fees and charges imposed by any municipality.

"**Lease Term**": Collectively, the Homesite Lease Term, Home Lease Term (if applicable), any Month-to-Month Term and any renewal term exercised (or deemed exercised) pursuant to a renewal addendum.

"**Losses**": Any claim, action, lien, liability, fine, damages, injury (whether to person or property or resulting in death), cost or expense, including reasonable attorneys' fees (including in-house counsel and appeal).

"**Month-to-Month Term**": As defined in the Lease.

"**Move In Date**": The Move In Date set forth in the Basic Provisions.

"**Non-Rent Defaults**": Defaults under this Lease, other than the failure to pay Rent or other amounts due under this Lease that are considered "Rent" by applicable Law or under this Lease.

"**Unapproved Occupant**": A person who resides at the Premises without Owner's consent.

"**Owner**": has the meaning set forth in the Lease, provided, however, if Owner transfers its interest in this Lease and/or the Premises, from and after such transfer "Owner" shall mean the transferee of such interest.

"Owner's Notice Address": Owner's Notice Address set forth in the Basic Provisions, as Owner may change the same from time to time

"Owner's Related Parties": Collectively, Owner, Community Manager, any mortgagee of all or any portion of the Community and each of their respective officers, directors, members, managers, partners, shareholders, employees, affiliates, agents and representatives.

"Premises": The Premises set forth in the Basic Provisions.

"Property Manager" or "Property Management Company": Impact Communities, including its employees and any successors, assigns, or transferees. Impact Communities acts as an agent of Owner, and also acts as a separate agent of Homesite Owner and, if the Premises includes the Home, Home Owner.

"Prorated 1st Month's Rent": The Prorated 1st Month's Rent set forth in the Basic Provisions.

"Rent": Collectively, Base Rent, Prorated 1st Month's Rent (if any), Additional Rent and all other amounts due to Owner pursuant to this Lease

"Rent Damages": Collectively, (i) all accrued Rent that is past due and unpaid, (ii) any late charges payable pursuant to this Lease and (iii) Enforcement Costs.

"Rent Payment Address": The Rent Payment Address set forth in the Basic Provisions, as Owner may change the same from time to time.

"Rent Default Termination Damages": Collectively, (i) Rent Damages, (ii) to the extent permitted by Law, all Base Rent that would have been payable by Resident for the remainder of the Lease Term and (iii) to the extent permitted by Law, any other amount necessary to compensate Owner for all the detriment proximately caused by Resident's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom.

"Resident": The Resident(s) set forth in the Basic Provisions, together with each additional Resident that becomes a party to this Lease

"Resident Owned Home" (also "ROH"): The Home described in the Resident Owned Home Addendum.

"Resident Party" or "Resident Parties": Collectively, Resident, Approved Occupants and each of their respective agents, contractors, Guests, heirs, executors, administrators and permitted assigns.

"Resident's Notice Address": Resident's Notice Address set forth in the Basic Provisions.

"Rules and Regulations": The rules and regulations concerning Residents use and occupancy of the Community as updated from time to time. The terms "Rules and Regulations," and "Community Standards" or "Standards" and may be used interchangeably

"Security Deposit": The Security Deposit set forth in the Basic Provisions.

"Self-Help Costs": As defined in the Lease or applicable law.

"Standards": The Community Standards, or "Rules and Regulations," concerning Residents use and occupancy of the Community as updated from time to time. The terms "Standards," "Community Standards" or "Rules and Regulations" may be used interchangeably.

"State": The state in which the Community is located.

"Transfer": To sublease, assign, transfer, convey, mortgage, pledge, hypothecate, or encumber this Lease or Resident's interest therein, or to otherwise permit the use or occupancy of the Premises or the Home, or any part thereof, by anyone other than Resident, whether by operation of law or otherwise; provided, however, if Resident owns the Home, Resident may, subject to the terms and conditions of this Lease, pledge Resident's interest in the Home (but not Resident's interest in any portion of the Premises).

"Utility Bill": As defined in the Utility Addendum

(Signature page follows)

ACKNOWLEDGED, ACCEPTED and AGREED as of the Effective Date.

OWNER:

_Camacho_  3/27/2020
*Title: Agent                     Date

*Agent's signature is also valid as to HOME OWNER but only if
HOME/RENTER ADDENDUM is attached

RESIDENTS(s):

_____  _____    _____  _____
Resident Signature               Date      Resident Signature              Date

_____  _____    _____  _____
Resident Signature               Date      Resident Signature              Date

_____  _____    _____  _____
Guarantor Signature              Date      Guarantor Signature             Date

## STATE SPECIFIC ADDENDUM
### (Missouri)



THIS STATE-SPECIFIC ADDENDUM ("**Addendum**") is attached to, incorporated into and made an integral part of the Lease (as amended from time to time, the "**Lease**") and is dated as of the Effective Date of the Lease between Owner and Resident.

(a) Community Name and Address ("**Community**"):

   Northgate Manufactured Home Community

   1260 NE US Hwy 69

   Liberty, MO 64068

(b) Name(s) of **Resident(s)** signing Lease (collectively, "**Resident**")

   (1) Jessica Abarca                        (3) _____

   (2) _____                         (4) _____

(c) "**Premises**":

   Homesite/Lot Number:    055

   Street Address/          1260 NE US Hwy 69 #55

   City/State/Zip:          Liberty, MO 64068

(d) The "**State**":    The State of Missouri

(e) Notice of Prior Methamphetamine Production:    Has Owner received written notice from law enforcement authorities that the Home and/or Homesite have been used for the manufacture of methamphetamine?

   ( x ) No              ( ) Yes

(f) Notice of Prior Resident's Criminal Activity    Have the Premises been the place of residence of a person convicted of any of the following crimes, or have they been a storage site, or laboratory, for any of the following substances for which a person was convicted of any of the following crimes, provided that Owner knew or should have known of such convictions:

   (i).   Creation of a controlled substance in violation of RSMo 579.110;

   (ii).  Possession of ephedrine with intent to manufacture methamphetamine in violation of RSMo 195.246;

   (iii). Unlawful use of drug paraphernalia with the intent to manufacture methamphetamine in violation of subsection 2 of RSMo 579.074;

   (iv).  Endangering the welfare of a child by any of the means described in subdivisions (4) or (5) of RSMo 568.045; or

   (v).   Any other crime related to methamphetamine, its salts, optical isomers, and salts of its optical isomers, either in RSMo Chapter 195, or in any other provision of law.

   ( x ) No              ( ) Yes

### RESIDENT AND OWNER AGREE AS FOLLOWS:

1. **ADDENDUM.** Capitalized terms used in this Addendum shall have the meanings set forth in the Lease. Except as expressly modified by this Addendum, all terms and conditions of the Lease remain unchanged, and the provisions of the Lease are applicable to the fullest extent consistent with this Addendum. If a conflict between the terms of this Addendum and the Lease exists, the terms of this Addendum shall control the matters specifically governed by this Addendum. Any breach of the terms of this Addendum shall constitute a breach of the Lease to the same extent and with the same remedies to Owner as provided in the Lease or otherwise available at law or equity.

2. **LAWS.** Any and all references in the Lease to "Law" or "Laws" includes, without limitation, the following as may be amended from time-to-time.

   (a) RSMo Chapter 441;

   (b) RSMo Chapter 442;

(c) RSMo Chapter 535,

(d) RSMo Chapter 570, and

(e) RSMo Chapter 700.

3. **STATE-SPECIFIC PROVISIONS.**

(a) **Community Manager.** The Community Manager shall be the person/persons Resident may look to as authorized to manage the Community and accessible to Resident for purposes of service of process and receiving and giving notices and demands.

(b) **Acknowledgement and Notice of Methamphetamine Presence.** Resident acknowledges and agrees that Owner has, in accordance with the Laws of the State, notified Resident, whether to Owner's knowledge, the Premises have been used as a site for methamphetamine production or storage, and/or a place of residence for a person convicted of methamphetamine related crimes.

(c) **Duty to Mitigate.** Notwithstanding anything contained in the Lease, Owner shall have a duty to mitigate any damages brought upon Owner due to the actions of Resident.

(d) **Owner Covenants.** Notwithstanding anything else contained in the Lease, Owner shall do the following:

  (i) Keep the Premises in a habitable, sanitary, and secure condition; and

  (ii) Refrain from unreasonably shutting off, or interfering with, Resident's water, electrical, and gas service.

(e) **Resident Covenants.** Notwithstanding anything else contained in the Lease, Resident shall do the following:

  (i) Pay all Rent when due;

  (ii) Dispose of all rubbish, garbage, and other organic waste in the Premises in a clean and sanitary manner;

  (iii) Refrain from unreasonable use of electrical, heating and plumbing fixtures;

  (iv) Meet all obligations lawfully imposed on Resident by a governmental entity;

  (v) Refrain from willfully or wantonly destroying, defacing, damaging, impairing, or removing any part of the Premises, or the facilities, equipment, or appurtenances thereof, and prohibit any other person on the Premises with Resident's permission from doing the same; and

  (vi) Not take in additional occupants, sublease the Premises, or assign the Lease without Owner's consent.

(f) **Insufficient Funds.** Resident agrees to pay Owner $20.00 for each dishonored bank check which Resident presents to Owner (or such greater amount as may be charged to Owner by its bank for any such dishonored check, but in no event in excess of the amount permitted by Law). In the event that two (2) or more checks submitted by Resident are returned for insufficient funds, Resident shall, for the remainder of the Lease Term, be required to pay by money order, cashier's check or certified funds only.

ACKNOWLEDGED, ACCEPTED and AGREED as of the Effective Date.

OWNER: _Camacho_ 3/27/20
Title: Agent   Date

RESIDENT(S):

_Jessica Isaac_ 3/27/20
Resident Signature   Date    Resident Signature   Date

Resident Signature   Date    Resident Signature   Date

Guarantor Signature   Date    Guarantor Signature   Date

## UTILITIES ADDENDUM
### (FL / IL / IN / IA / KY / MI / MO / NE / ND / OH / OK / SD / VA / WV / WY)



THIS UTILITIES ADDENDUM ("**Addendum**") is attached to, incorporated into and made an integral part of the Lease (as amended from time to time, the "**Lease**") and is dated as of the Effective Date of the Lease between Owner and Resident.

(a) Community Name and Address ("**Community**")

MOCL Northgate MHP, LLC dba Northgate Manufactured Home Community

1260 NE US Hwy 69

Liberty, MO 64068

(b) Name(s) of **Resident(s)** signing Lease (collectively, "**Resident**")

(1) Jessica Abarca          (3) _____

(2) _____          (4) _____

(a) The "**Premises**":

Homesite/Lot Number: 055

Street Address: 1260 NE US Hwy 69, #55

City/State/Zip: Liberty, MO 64068

(a) **UTILITY AND SERVICE CHARGES**. Charges for utilities and other services related to Resident's occupancy of the Premises, whether provided by Owner or a third-party, will vary by community, the state where the community is located, changes in local law, the service provider, and in some instances, the time of year (summer vs. winter water or electricity rates; etc.). Resident is responsible for the following utility and other service charges during the term of the Lease:

1. **WATER**. Each monthly water bill is comprised of two general types of charges a base charge which is assessed every month and appears on your bill whether you use some water or no water, and a volumetric charge (or water usage charge) which is based on metered consumption. Base and volumetric charges are generally calculated as follows: (1) Water Base Charge: determined by dividing the total fixed charges billed to the community by the total number of occupied and vacant residential units, and non-residential units. These charges may also include local and state taxes, infrastructure charges, wastewater charges, service fees and charges and meter fees charged by the utility provider; may also include operator charges, testing fees, filing fees as required by law, and other charges directly applicable to providing water to the home. (2) Volumetric charge: calculated by taking the Water Utility provider's total monthly volumetric charges for water service and dividing that by the total number of gallons used in the Community; may include applicable taxes.

2. **SEWER**. Each monthly sewer (based on the water usage if the sewer meter is absent) bill is comprised of two general types of charges a base charge which is assessed every month and appears on your bill whether you use some sewer or no sewer, and a volumetric charge (or sewer usage charge) which is based on metered consumption. Base and volumetric charges are generally calculated as follows: (1) Sewer Base Charge: determined by dividing the total fixed charges billed to the community by the total number of occupied and vacant residential units, and non-residential units. These charges may also include local and state taxes, infrastructure charges, wastewater charges; service fees and charges and meter fees charged by the utility provider; may also include operator charges, testing fees, filing fees as required by law, and other charges directly applicable to providing water to the home. (2) Volumetric charge: calculated by taking the Sewer Utility provider's total monthly volumetric charges for sewer service and stormwater service and dividing that the total number of gallons used in the Community; may include applicable taxes.

3. **ELECTRICITY**. Resident billed directly by the local utility company, as a Direct-Billed Utility (as defined below).

4. **NATURAL GAS**. Resident billed directly by the local utility company, as a Direct-Billed Utility (as defined below).

5. **PROPANE**. Resident billed directly by the local utility company, as a Direct-Billed Utility (as defined below).

6. **TRASH**. Flat fee of $20.00, per month.

7. **CABLE TV/INTERNET**. Included in rent and paid by owner

8. **OTHER**. Administrative Charge: $25.00 administrative fee will be charged for any invoice that the community receives for your home for a direct billed utility plus the invoice amount. Reference section 2.a.ii below; Water Meter Charge: $5.00 Water meter reading, usage and analytics fee.

$3.00 Vehicle parking tax, per month.

### TERMS & CONDITIONS

1. **ADDENDUM**. Capitalized terms used in this Addendum shall have the meanings set forth in the Lease. Except as expressly modified by this Addendum, all terms and conditions of the Lease remain unchanged, and the provisions of the Lease are applicable to the fullest extent,

consistent with this Addendum. If a conflict between the terms of this Addendum and the Lease exists, the terms of this Addendum shall control the matters specifically governed by this Addendum. Any breach of the terms of this Addendum shall constitute a breach of the Lease to the same extent and with the same remedies to Owner as provided in the Lease or otherwise available at law or equity.

2. **PROVISION OF UTILITIES.** Unless otherwise provided for in the Lease or by law, Owner is responsible for providing water and sewer and gas (if applicable) and electric up to the point of connection of the Premises. Resident is responsible for all maintenance from that point of connection to the Home. In addition, Resident is required to heat tape and insulate all exposed water lines, meter pits, and meters. Should there be a break due to the heat tape not functioning then the Resident is responsible for the cost of replacement.

3. **BILLING FOR UTILITIES AND SERVICE CHARGES:**
   a. **Direct Billing by Utility or Service Provider.**
      i. **Resident Responsible for All Direct-Billed Utilities or Services.** Resident is solely responsible for all utilities and services (including related deposits, charges, fees, late fees, penalties, interest, etc.) that are billed directly to Resident by the applicable utility or service provider as set forth in this Addendum (each, a "Direct-Billed" utility or service).
      ii. **Direct Billing by Utility or Service Provider.** Resident shall transfer into Resident's name all Direct-Billed utilities and services either prior to or on the day of move in. Proof that utilities have been turned on and transferred, or have been transferred and scheduled for turn on, is required before Resident will be allowed to move in unless prior arrangements have been agreed to in writing with Owner. Resident acknowledges and agrees that Resident's failure to timely turn-on and/or transfer utility service may result in Owner withholding move-in privileges until such verification has been obtained and delivered to Owner, to the extent allowable by applicable Law. If, at any time during Resident's occupancy of the Premises, utilities are turned-off or otherwise interrupted due to non-payment, or if the applicable utility account is transferred into the name of Owner and/or the Community without Owner's prior written consent, Resident shall be in default of the Lease and Owner shall have all available remedies to the extent allowed by applicable Law.
      iii. **Resident's Failure to Transfer Direct-Billed Utilities or Services.** If Resident fails to transfer Direct-Billed utilities or services into Resident's name and such charges are then billed by the provider to Owner's account and comingled with Owner's other charges, Resident agrees to pay to Owner, upon demand, $25.00 as reasonable compensation for Owner having to identify, verify, separate, and reallocate Resident's charges from Owner's charges; then re-bill Resident's charges to Resident ("Expense Reallocation Fee"). Owner may include the Expense Reallocation Fee on Resident's monthly statement.
   b. **Utility Billing by Owner.** Certain utility services, may, from time to time, be billed by Owner to Resident. Resident shall pay Owner, as Additional Rent, for those utilities billed by Owner or Owner's agent for such billing (each, a "**Utility Bill**"). Generally, utilities, especially water and sewer, are billed in arrears. Owner may bill Resident for utilities based several acceptable methods including (i) ratio utility billing (RUBs or Ratio Utility Billing System), (ii) the total number of occupied residential units divided by the total invoice amount, (iii) estimate, (iv) flat fee, (v) actual reading of a submeter for the occupied Premises, or (vi) any other method as determined by Owner in compliance with applicable law. Utility charges billed by Owner may also include but are not limited to a "base fee" or "base charge" which is a minimum monthly charge often imposed by utility providers and billed to a customer every month even if no utilities are used in a particular billing cycle (Owner may also charge its own base fee or base charge comprised of actual charges regularly billed by a utility service provider on a monthly basis); federal, state and local taxes; costs of providing and maintaining utility service; operating costs; costs for well operators and mandatory well testing; etc., and may or may not be itemized separate and apart from usage charges. All charges billed to Resident are based on invoiced amounts and other actual operating and service costs, etc. related to the provision of utilities. As a regular part of each monthly Utility Bill, Resident may also be charged a monthly service fee of $see Utility and Service Charges: Other in addition to the utility service charges for which Resident is billed. The monthly service fee is for administration, billing, overhead and similar expenses and charges incurred by Owner for providing and/or processing Utility Bills. Owner may use a third-party to provide all or part of the utility billing services or for meter reading and monitoring; provided, however, that Owner shall at all times reserve the right to collect unpaid Utility Bills. No other service fee will be charged by Owner, including service fees for gas, water, electric, etc., unless such fee is charged to Owner by a third-party utility provider. Resident agrees to allow Owner, a billing service provider or any utility providers designated by Owner, reasonable access to the Premises to read and service the submeter(s), if any, for the Premises.
      i. **Proration.** If Resident moves into or out of the Premises on a date other than the first day of the month, Resident will be charged for the full period of time that Resident was living in, occupying, or responsible for payment of Rent or utilities for the Premises.
      ii. **VIRGINIA RESIDENTS ONLY:** Owner may charge Resident a $5.00 late fee in the event Resident is late in its payment of any Utility Bill.

1. **RESIDENT DEFAULT.** If Resident is in default under the Lease, Resident shall be liable for all charges for utilities through the time it takes Owner to retake possession of the Premises, regardless of whether Resident is still occupying the Premises.

2. **FAILURE TO PAY UTILITIES.** Resident shall pay all charges for utilities on the date specified in a Utility Bill and each Direct-Billed Utility, whether to Owner or a third-party utility provider. This covenant is independent of every other covenant of the Lease. If Resident is charged for utilities separately from Rent, then such charges shall be deemed "Rent" for purposes of any defaults under the Lease. Resident shall not allow any utility, other than telephone, to be interrupted or interfered with or disconnected by any means, including the non-payment of a bill, until the end of the Lease Term. Resident shall pay any utility reconnection fees associated with gas or electricity, either directly to the utility provider or to Owner, if paid by Owner, which shall be added to Resident's next monthly Utility Bill.

3. **USE OF UTILITIES.** Resident shall use the utilities only for ordinary household purposes and shall not waste them

4. **CHANGE OR INTERRUPTION IN UTILITY SERVICE.** Utilities now provided, or any utility rates now in effect, may not continue in the future, to the extent allowable by applicable Law. Resident's responsibility to pay for utilities shall be unaffected by any change in utilities, rate increase and/or reclassification. Owner may make changes to, or install, utility wires, meters, sub-metering or load management systems, and similar electrical and other utility equipment serving the Premises. This work shall be done in a reasonable manner. Owner shall not be liable for any damages for failure of utilities or services occasioned by strikes, breakage of equipment, failure of source of supply, acts of God or by any acts or causes beyond the immediate control of Owner. All charges set forth in this Addendum are subject to change with notice based on the then-applicable local utility or other third-party expense being charged by each of the respective utility companies or any other third-party provider, or as otherwise permitted by Law.

5. **UTILITY AND METER TAMPERING.** Resident shall not tamper with, adjust or disconnect any metering or submetering system or device. Tampering in any way with utilities or any utility meter or similar measuring device will result in a **minimum fine of $200 to the Resident plus the reasonable costs of repair and/or replacement.**

6. **LEAKS.** Resident agrees to promptly investigate all suspected leaks and repair actual leaks occurring on or about the Premises. If Resident refuses to investigate and/or repair suspected or actual leaks after reasonable request by Owner, Resident hereby authorizes Owner and its agent to enter the Premises with at least 24 hours advance written notice to Resident, investigate and repair any suspected leaks, and charge all related costs of the investigation and repair to Resident which Resident agrees to pay as Additional Rent.

7. **CHARGES SUBJECT TO CHANGE.** All charges set forth in this Addendum are subject to change with notice based on the then-applicable local utility or other third-party expense being charged by each of the respective utility companies or any other third-party provider, or as otherwise permitted by Law.

8. **RESERVATION OF RIGHTS.** Where utilities or other services are stated in the Lease or Addendum as being "Included in Base Rent." Owner reserves the right to later pass through to Resident such utility and other charges upon proper notice to Resident. In passing through any such charges, Owner also reserves the right to use any billing method for utilities or services that is compliant with applicable law; however, Owner will only use one billing method per each utility or service type. Owner further reserves the right to install meters or other measuring devices on each Home for the purpose of tracking usage and detecting leaks.

ACKNOWLEDGED, ACCEPTED and AGREED as of the Effective Date of the Lease

OWNER: *[signature: Camacho]*
Title: Agent                                                                          Date

RESIDENTS(s):

*[signature: Jessica Abarca  3-21-20]*
Resident Signature                                     Date            Resident Signature                                     Date

_____            _____
Resident Signature                                     Date            Resident Signature                                     Date

_____            _____
Guarantor Signature                                    Date            Guarantor Signature                                    Date

*(Remainder of page intentionally left blank)*

**MOCL Northgate MHP, LLC**
Make all Rent Payments By Check or Money Order
(NO Cash Payments will be Accepted!)

### Resident Info
*Please print legibly.*

Date: 03-27-2020

Number of Adults: 1

Adult Resident Names: Jessica Abarca

Adult Birthdates:

Name & Birthdate: 03-14-1989

Name & Birthdate: ___

Name & Birthdate: ___

Name & Birthdate: ___

Are any residents in this home a member of the Armed Forces? No

Lot Address: 1260 NE US Hwy 69 #55, Liberty, MO 64068

Mailing Address: ___

Home Phone: 816-634-6229

Cell Phone: 913-605-3024

Email: imdabrandnewyou2016@gmail.com

Cell Phone: ___

Make of Home: ___

Year of Home: ___

VIN #: ___

Title #: ___

Width of Home: ___

Length of Home: ___

Number of Children (living here): 2

Ages of Children: 7 & 4

Names of Children: Miyah Abarca-Smith, Javon Ray Scott Abarca

Number of Pets: 0

Type of Pets: N/A

Emergency Contact Person and Phone #: Sherry Harper 816-457-1366

Insurance Company: Traid ___ (Provide copy to Manager)

If you have a loan on your home:

Name & Phone # of Bank or Finance Company: Traid

List all Motor Vehicles to be kept at the Property:

| Make | Color | Model | Year | License Plate # | State |
|---|---|---|---|---|---|
| Jeep | Silver | Grand Cherokee | 03 | PF8-G6N | MO |
| Ford | White | Mustang | 98 | | MO |

**REQUIRED Utility Account Numbers

Electricity: ___

Gas: ___

Updated: 02/2018

## ACKNOWLEDGEMENT REGARDING WRITTEN LEASE AGREEMENT



By signing this document you acknowledge that you are about to enter into a Lease, which is a binding contract, with Owner and that you understand the following:

(1) Any and all of the terms, conditions, representations, warranties, promises or assurances of Owner or any of Owner's agents, representatives or employees related to the Lease are set forth in the written documents associated with the Lease, including but not limited to any addendums and the Community Standards (collectively, "Attachments"), **and that there are no oral terms, conditions, representations, warranties, promises or assurances** relating to the Lease made by Owner or any of its agents, representatives or employees that are not included in the Lease and any Attachments.

(2) No term, condition, representation, warranty, promise or assurance will be enforceable with respect to the Lease unless it is included in the Lease and any Attachments.

(3) You are advised not to sign the Lease and any Attachments unless each term, condition, representation, warranty, promise or assurance made to you is included in the Lease and any Attachments.

(4) Once the Lease and all Lease Attachments are signed by you and Owner or Owner's agent, representative or employee, any amendment, change or modification to the Lease or Lease Attachments must be in writing and signed by both you and Owner, or Owner's agent, representative or employee, before it becomes effective and enforceable as part of the Lease and any Attachments.

| _Jessica Alvarez_ 02-26-20 | | |
|---|---|---|
| Resident Signature | Date | Resident Signature | Date |
| Resident Signature | Date | Resident Signature | Date |
| Guarantor Signature | Date | Guarantor Signature | Date |